Donahue, J.
The pleadings in this action present no material issue of fact. The defendants admit the execution of the contract attached to plaintiff’s amended petition, and the rights of the parties depend upon a correct construction of that entire contract, and not of any one part thereof.
It provides that “the consideration for the transfer of stock as herein provided to The Hocking Valley Railway Company and The Toledo and Ohio Central Railway Company is the assumption by each of said companies, separately, towit, The Hocking Valley Railway Company and The Toledo and Ohio Central Railway Company, of their proportion or share of the liability for deficiency in interest charges and working expenses accruing only on and after January 1, 1914, in the operation of The Toledo Terminal Railroad Company.”
*41 This language is so plain as to require no construction. As a rule it is considered sufficient in a contract of this character to recite the consideration to be paid for the property purchased; but these contracting parties caused to be written into this contract a further stipulation, specifying considerations that the purchasing companies would f not be required to pay. That provision is found in Article II, and reads as follows: “It is now understood and agreed, severally, and mutually between the parties hereto, that the said The Hocking Valley Railway Company and The Toledo and Ohio Central Railroad Company are in no way to assume or pay the whole or any part of any unearned interest heretofore due.” That language is. equally clear and unequivocal and undoubtedly was written into this contract for .the express purpose of protecting the purchasing companies from repayment to the seven original proprietary companies of any part of the money contributed by the original companies under the contract of December 4, 1907, to pay unearned interest on the bonded indebtedness of The Toledo Terminal Railroad Company prior to the time that plaintiff in error and The Toledo & Ohio Central Railway Company were interested in the operation of the terminal company. The contract of December 4, 1907, did not provide for the loan of money by the proprietary companies to the terminal company. On the contrary, it provided that “any deficit arising from the conduct of the business by the New Company shall be borne from time to time by the seven companies in proportion to the amount of stock held by each.”
*42 The issuing of interest-bearing certificates of indebtedness to evidence the amount contributed by the proprietary companies to meet this deficit was evidently an afterthought. However that may be, if these certificates in fact represent a bona fide indebtedness of the terminal company, the debt evidenced thereby is due and owing to the seven proprietary companies who have entered into a contract which in no uncertain terms provides that The Hocking Valley Railway Company and The Toledo & Ohio Central Railway Company shall not assume or pay all or any part thereof.
The resolution of the board of directors of October 3, 1916, purports to construe Article III of the contract of January 14, 1914. It entirely overlooks the fact that a contract must be construed as a whole.
Article III contains no reference to the deficits arising prior to the date of that contract, nor was it necessary that it should do so. The agreement in relation to these deficits is fully covered in Articles I and II. There is no conflict between these separate provisions of the contract, and therefore Article III cannot be construed so as to defeat the express and emphatic provisions of Articles I and II. But this resolution does not correctly construe the provisions of Article III, even if it stood alone. That article Specifically provides that all earnings of the terminal company, over and above operating expenses, taxes, etc., shall be credited to a fund for payment of the interest upon the bonded indebtedness of The Toledo Terminal Railroad Company, unless by unanimous, vote of the directors of The *43 Toledo Terminal Railroad Company the same or any part thereof shall be applied towards additions, improvements, betterments, etc.
The operation of this company for the years 1914 and 1915 resulted in a deficit, and the parties to this contract contributed to the payment of such deficit in proportion to the amount, of stock held by each. The operation of the terminal company for 1916 resulted, for the first time in its history, in the earning of a surplus over and above the current operating expenses, interest on the bonded indebtedness, and taxes, and this resolution in defiance of the terms of Article III, providing that the same should be credited to a fund for the payment of the interest on its bonded indebtedness, undertakes to appropriate this surplus to the payment of the certificates of indebtedness issued by the terminal company to the seven original proprietary companies for funds contributed by them to pay unearned interest falling due prior to January 1, 1914.
If this were permitted to be done, and the operation of the terminal company in the succeeding year should result in a deficit, this plaintiff in error and The Toledo & Ohio Central Railway Company would be compelled to contribute in proportion to the stock owned by them to the payment of such deficit, notwithstanding the evident purpose of Article III was to create a fund to meet such interest charges in any subsequent year that the earnings of the terminal company were not sufficient for that purpose. Should this fund now be diverted to the payment of unearned interest falling due prior to January 1, 1914, and contribution be re *44 quired to pay deficits in later years, it would hardly be contended that the plaintiff in error and The Toledo & Ohio Central Railway Company would not be paying indirectly, if not directly, a part of the deficit accruing prior to January 1, 1914.
Regardless, however, of the provision in Article III that the surplus earnings shall be credited to a fund for the payment of the interest upon bonded indebtedness, the application of these funds to the payment of unearned interest falling due prior to January 1, 1914, would be in direct violation of the terms, intent, and purpose of this contract.
While the legal title to all corporate property is vested in the corporation, nevertheless, it holds this title in trust for its stockholders and creditors. Every stockholder has a property interest in the corporate property. Every dollar expended from its treasury for which the corporation receives no equivalent in service, income, product, or material, not only reduces the value of its stock, but decreases the amount of the dividends the stockholders will receive in the due course of the company’s business; for it is the purpose and intent of its organization that all earnings not required in the corporate business will at proper times be distributed in dividends to the stockholders. In fact, the purpose of its being is to earn a profit for its stockholders. It is of course evident that if the surplus earnings of this corporation are applied to the payment of its debts, for which this plaintiff and The Toledo & Ohio Central Railway Company are not liable, the practical effect would be to compel them to pay a *45 part of this debt through the instrumentality of the corporation. These companies might just as well be required to pay a part of the interest accruing prior to January 1, 1914, out of the dividends actually declared and paid to them, as to permit the corporation to pay these debts out of its surplus earnings, that otherwise would be distributed in dividends, if not retained for corporate purposes. The result, so far as they are concerned, would be the same.
It is insisted, however, that this contract between the stockholders cannot deprive The Toledo Terminal Railroad Company of its corporate powers to appropriate its surplus earnings to the payment of its debts. That proposition is true in the abstract, but it is evident that the terminal company is but a creature of these nine corporations, having no other stockholders than the parties to this contract, who absolutely control its operations.
Aside from that, this contract is made with the creditors who are seeking to appropriate these surplus earnings to the payment of their claims, so that this case does not involve any question arising between the terminal company and its creditors or stockholders other than those who were parties to this contract.
The board of directors of the terminal company recognized this contract as a contract of all the real owners of the corporate property, and therefore undertook to carry it into effect. To this end the board of directors passed this resolution purport *46 ing to construe Article III. The answer of The Toledo Terminal Railroad Company admits that unless restrained by order of court it proposes to and will carry this contract into effect, according to the interpretation of its meaning and terms as declared in the resolution of October 3, 1916. If the corporation is attempting in good faith to give effect to Article III of this contract, there is no good reason why it should be unwilling to observe the plain and positive provisions of Articles I and II, expressed in language too clear to require construction.
This contract in no way conflicts with the rights of the corporation itself. It is in no sense prejudicial to the rights of the general creditors, and all the stockholders having signed this contract, they are in no position to object to any of its terms.
The original seven proprietors of the terminal company are the only ones who could benefit by a repudiation of the contract. By reason of holding the majority of the stock, these seven companies are in control of its board of directors and managing officers. They cannot use this corporation as an instrument to avoid or defeat the manifest purpose and intent of their own contract, defining the rights and liabilities of those who under the terms and conditions written therein purchased stock directly from the individual stockholders party thereto.
The judgment of the court of appeals is reversed, and, there being no material issue of fact joined by *47 the pleadings, judgment is entered for the plaintiff in error in accordance with the prayer of its petition.

Judgment reversed, and judgment for plaintiff in error.

Nichols, C. J., Jones, Matthias and Johnson, JJ-, concur.